NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROGER J. SIEBEL,<br><br>       **Plaintiff,**<br>v.<br><br>WORK AT HOME VINTAGE EMPLOYEES, LLC d/b/a WAHVE, LLC,<br><br>       **Defendant.** | **Civil Action No. 12-1199 (CCC)** |
| ROGER J. SIEBEL,<br><br>       **Plaintiff,**<br>v.<br><br>SHARON EMEK,<br><br>       **Defendant.** | **Civil Action No. 12-1210 (CCC)**<br><br>**OPINION** |

**FALK, U.S.M.J.**

   This matter comes before the Court upon Plaintiff's motions for leave to amend his Complaints in the above captioned cases [Docket 12-1199 CM/ECF No. 19; Docket 12-1210 CM/ECF No. 17.] Both motions are opposed. The motions are decided on the papers. Fed.R.Civ.P. 78(b). For the reasons set forth below, both motions are **granted**.

1

## BACKGROUND

*A. Factual*

In 2010, Plaintiff Roger J. Siebel ("Plaintiff" or "Siebel") and Defendant Sharon Emek ("Emek") formed Defendant WAHVE, LLC ("WAHVE"), a limited liability company which provided contract staffing for the insurance industry.[1] (Compl. ¶¶ 6-7.)[2] Siebel was a member of its Board of Managers.[3] (Id. ¶ 7.)

In April 2010, WAHVE issued a Private Placement of Common Units offering to raise funds. (Id. ¶ 8.) Three months later, Siebel and Emek entered into a Member Units Repurchase Agreement pursuant to which WAHVE was to pay a premium on a life insurance policy owned by Siebel; upon Siebel's death, the policy proceeds would be paid to Siebel's estate and Siebel's ownership interest would be returned to WAHVE. In May 2011, Emek and Siebel entered into a WAHVE Operating Agreement ("Operating Agreement") which governed, among other things, removal of a manager, and the valuation, sale and repurchase of member units.[4] (Id. ¶ 12.) Under the Operating Agreement, WAHVE was given the right to repurchase Siebel's units if he were terminated for cause or voluntarily resigned. The following month, Plaintiff met with Emek to discuss their intent to negotiate the end of their business relationship at which time Siebel offered to sell Emek his units for $600,000. (Id. ¶ 14.) According to Plaintiff, Emek subsequently made false and defamatory statements about him, including accusing him of stealing confidential WAHVE files. On July 5, 2011, Emek allegedly

---

[1] WAHVE, LLC subsequently changed its name to Work At Home Vintage Employees, LLC doing business as WAHVE, LLC. (Compl. ¶ 7.)

[2] Citations are to the Complaint filed in Civil Action No. 12-1210 unless otherwise noted.

[3] According to Plaintiff, Siebel and Emek entered into a WAHVE Operating Agreement pursuant to which Siebel was made a member of the Board of Managers. (Compl. ¶ 7.)

[4] According to the Complaint, this Operating Agreement "updated" an earlier WAHVE Operating Agreement between the parties. (Compl. ¶¶ 7-12.)

2

terminated Siebel without cause, using her false accusations about Plaintiff as a grounds for the discharge. (Id. ¶ 18.)

**B. Procedural**

On February 27, 2012, Siebel commenced two separate actions: one against Emek[5] and the other against WAHVE.[6] Both Complaints contain multiple counts for breach of the Operating Agreement by Emek and WAHVE. Specifically, Plaintiff asserts various breaches including removing Siebel as Manager without cause and "in furtherance of a scheme to misappropriate Siebel's WAHVE ownership." Plaintiff's Complaint against Emek contains additional counts for defamation and fraudulent inducement. Among other things, Plaintiff seeks a declaratory judgment relative to the value of his units.

Defendants Emek and WAHVE filed Answers on May 14, 2012, and May 15, 2012, respectively. The Court consolidated the cases for pretrial purposes and entered a Pretrial Scheduling Order on June 19, 2012. Pursuant to the Pretrial Scheduling Order, fact discovery closed on February 28, 2013, and any motions to amend pleadings were to be filed by October 1, 2012. The Court subsequently entered an Order on January 17, 2013 directing that the depositions of Siebel, Emek and the former Chief Financial Officer of WAHVE, Mr. Caragliano, were to be completed by April 1, 2013. On June 29, 2013, Siebel filed the instant motions seeking to amend his pleadings pursuant to Federal Rule of Civil Procedure 15(a).

**C. Current Motions**

Plaintiff seeks leave to amend his Complaint against WAHVE to add a count for breach of contract and estoppel, and to include a claim for compensatory damages for the value of his units in WAHVE. Siebel contends that discovery conducted in March 2013, after the deadline for amending pleadings, revealed that WAHVE had transferred

---

[5] Siebel v. Emek, 12-1210 (CCC).

[6] Siebel v. Work at Home Vintage Employees, LLC, 12-1199 (CCC).

ownership of his shares to one or more officers of WAHVE in violation of the Operating Agreement. According to Plaintiff, he first learned that WAHVE sold his shares during an interview of a non-party witness, Mr. Caragliano, in March 2013. Plaintiff claims that Defendants failed to reveal this information in their Rule 26 disclosures and prior discovery responses and that any delay in raising the proposed new claims is not attributable to Plaintiff but is due to Defendants' failure to disclose the facts earlier in discovery.

Plaintiff also seeks leave to amend his Complaint against Emek to assert claims for breach of fiduciary duty and breach of the covenant of good faith and fair dealing, and to seek punitive damages on the defamation count. Plaintiff maintains that discovery conducted subsequent to the amendment deadline revealed that Emek had engaged in several wrongful acts in derogation of Seibel's contract rights, including manipulating company records to reduce the projected value of Siebel's shares, engaging in secret merger negotiations, and undervaluing his shares in WAHVE. In particular, Plaintiff claims that the deposition of Emek and a supplemental production of documents by Defendants, both which occurred in March 2013, revealed information supporting Plaintiff's proposed new claims—information which was unknown to Plaintiff until receipt of Defendants' belated discovery responses.

Pointing out that Plaintiff's motion to amend was filed on June 29, 2013, nearly nine months after the deadline elapsed, and that Plaintiff waited until three months after the completion of fact depositions before filing his motion, Defendants argue that Plaintiff cannot satisfy the "good cause" standard of Federal Rule of Civil Procedure 16 to amend. Defendants also oppose the motions arguing that Plaintiff merely is attempting to recast the same facts into new claims. Defendants contend that the purported factual bases for the new amendments have been known to Plaintiff for some time—and in many cases since before the initiation of the litigation. Lastly, Defendants contend that Plaintiff cannot satisfy the standard to amend under Rule 15 because the claims are untimely and

4

futile.

## DISCUSSION

**A.** *Legal Standard for Amendment*

Once a responsive pleading has been filed, "a party may amend its pleadings only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Leave to amend is generally granted unless there is: (1) undue delay or prejudice; (2) bad faith; (3) dilatory motive; (4) failure to cure deficiencies through previous amendment; or (5) futility. Foman v. Davis, 371 U.S. 178, 182 (1962). The ultimate decision to grant or deny leave to amend is a matter committed to the Court's sound discretion. See, e.g., Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330 (1970).

A party seeking to amend the pleadings after the deadline must satisfy the requirements of Rule 16(b)(4)—the party must show good cause. See Fed.R.Civ.P. 16; Grasso v. Consolidated Rail Corp., No. 12-398, 2013 WL 3167761 at *5 (D.N.J. June 20, 2013); see also Dimensional Commc'n, Inc. v. OZ Optics, Ltd., 148 F. App'x 82, 85 (3d Cir. 2005) (good cause standard when determining the propriety of a motion to amend after the deadline elapsed). Whether "good cause" exists under Rule 16 rests primarily on the diligence, or lack thereof, of the moving party. GlobespanVirata, Inc. v. Texas Instruments, Inc., No. 03-2854, 2005 WL 1638136, at *3 (D.N.J. July 12, 2005). In determining whether good cause exists, courts typically consider whether the movant possessed, or through the exercise of reasonable diligence should have possessed, the knowledge necessary to file the motion to amend before the deadline expired. See Stallings ex rel. Estate of Stallings v. IBM Corp., No. 08-3121, 2009 WL 2905471, at *16 (D.N.J. Sept. 8, 2009) (denying plaintiff's motion to amend because they "had sufficient information to state the proposed claims well in advance of the Scheduling Order deadline").

The futility analysis on a motion to amend is essentially the same as a Rule 12(b)(6) motion. See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002)

("An amendment would be futile when 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'"). For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, (2007)). Given the liberal standard for the amendment of pleadings, "courts place a heavy burden on opponents who wish to declare a proposed amendment futile." See Pharmaceutical Sales and Consulting Corp. v. J.W.S. Delavau Co., Inc., 106 F. Supp. 2d 761, 764 (D.N.J. 2000) (citations omitted). Thus, "[i]f a proposed amendment is not *clearly* futile, then denial of leave to amend is improper." Harrison Beverage Co. v. Dribeck Importers, Inc., 133 F.R.D. 463, 468 (D.N.J.1990) (emphasis added); see also 6 Wright, Miller & Kane Federal Practice and Procedure, §1487 (2d ed. 1990).

**B. *Analysis***

1. Good cause/undue delay

The Pretrial Scheduling Order in this case provided that any motion to add new parties, whether by amended or third-party complaint, must be filed by October 1, 2012. Plaintiff's motions were filed on June 29, 2013, some nine months after the cut-off. Plaintiff readily concedes his motions were filed well beyond the time to amend. However, Plaintiff maintains that any delay in filing is due to Defendants' dilatory and spotty production of discovery. For instance, Plaintiff states that he timely served his written discovery on July 9, 2012, with Defendants' responses due on August 9, 2012. Defendants requested several extensions of time to respond, to which Plaintiff consented. As a result, Defendants did not provide their responses until October 16, 2012, more than two months after their original due date and two weeks after the deadline for filing motions to amend. Having received no discovery from Defendants, it is reasonable that Plaintiff had not moved to amend prior to the deadline to do so.

The Court finds that Plaintiff exercised reasonable diligence in filing his motions

to amend. Plaintiff maintains that the information that forms the bases of his new claims did not become known to him until at least March 2013 when he interviewed and deposed Mr. Caragliano, deposed Emek, and received Defendants' untimely production of documents—all of which occurred nearly six months after the October 1, 2012 deadline for amending pleadings had passed. Plaintiff identifies a number of instances after the deadline when he first learned of facts giving rise to his new claims.

With respect to Emek, Plaintiff specifically points to Emek's deposition on March 12, 2013 at which she allegedly testified that she never had any factual basis for her accusations that Plaintiff stole WAHVE documents—information Plaintiff maintains supports his proposed demand for punitive damages. Plaintiff also identifies newly discovered information relative to Emek's purported attempt to distort the value of Plaintiff's units. For instance, Plaintiff points to information revealed by Mr. Caragliano—that Emek had made payments on Siebel's life insurance policy despite her purported deposition testimony to the contrary—which Plaintiff asserts is relevant to the valuation of his shares. According to Plaintiff, emails produced by Defendants for the first time on March 22, 2013 purportedly demonstrate that Emek conspired with her evaluation expert to intentionally alter WAHVE's records to grossly undervalue Plaintiff's units. This newly revealed information, all which was discovered after the deadline to amend pleadings, could conceivably support Plaintiff's new demand for punitive damages on his slander count, and his proposed claims for breach of fiduciary duty and breach of the covenant of good faith and fair dealing against Emek.

With respect to the claims against WAHVE, Plaintiff states that he discovered that WAHVE had sold his shares during the March 2013 interview of Mr. Caragliano. Thus, according to Plaintiff, he only first learned of the alleged conversion of his shares giving rise to his claim for compensatory damages in March 2013, long after the time to amend had elapsed. On June 12, 2013, the Court entered an Order permitting Plaintiff to file motions for leave to amend. Plaintiff filed his motions less than three weeks later on June

7

29, 2013. For the reasons stated above, the Court finds that Plaintiff did not unduly delay and has demonstrated good cause to amend.

   2. Futility

Defendants argue that the proposed breach of contract and estoppel claim against WAHVE are futile. Defendants essentially contend that Plaintiff's claim for conversion of his shares in breach of the Operating Agreement is futile because the terms of the agreement permit such a transfer. According to Defendants, Plaintiff's claim is nothing more than an acknowledgment that Defendants acted in accordance with the Operating Agreement.

Plaintiff's proposed causes of action against WAHVE are not so "clearly futile" so as to deny the motion to amend. See Harrison Beverage Co., 133 F.R.D. at 468. Plaintiff alleges the existence of a contract, namely the Operating Agreement. Plaintiff further alleges that WAHVE converted his shares without paying him in breach of the Operating Agreement and that he suffered damage as a result. Plaintiff plausibly pled a breach of contract cause of action. The Court is satisfied that Plaintiff has alleged sufficient facts, at least in this limited context of a motion to amend, to conclude that the claim is not so clearly futile so as to deny the leave requested.[7]

## CONCLUSION

For the reasons set forth above, Plaintiff's motions for leave to amend are **granted**.

                                  s/Mark Falk
                                  **MARK FALK**

**Dated: November 18, 2013**            **United States Magistrate Judge**

---

[7]Plaintiff's allegations, at least for purposes of this motion, state a plausible claim for breach of contract. While it is conceivable that Defendants may succeed in defending against this claim, the claim is not so plainly frivolous or insufficient on its face so as to deny leave to amend.